UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REXEL, INC., REXEL DÉVELOPPEMENT SAS, and SOUTHERN ELECTRIC SUPPLY CO., INC.,

    Plaintiffs,

vs.

ROBERT R. HOLCOMB, and REDEMPTECH HOLDINGS PTY, LTD., a/k/a REDEMPTECH HOLDINGS PTE, LTD., REDEMPTECH LIMITED and REDEMPTECH AUSTRALIA PVT. LTD.

    Defendants.
_____/

Case No. _____

## PLAINTIFFS' VERIFIED MOTION FOR PRELIMINARY INJUNCTION AND SUPPORTING MEMORANDUM OF LAW

Plaintiffs, REXEL, INC. ("Rexel"), REXEL DÉVELOPPEMENT SAS ("Rexel Développement") and SOUTHERN ELECTRIC SUPPLY CO., INC. ("Southern Electric"), pursuant to Rule 65, Federal Rules of Civil Procedure, and Local Rules 4.05 and 4.06, by and through their undersigned counsel, hereby move for a preliminary injunction (the "Motion") against Defendants, ROBERT R. HOLCOMB ("Holcomb"), REDEMPTECH HOLDINGS PTY, LTD. a/k/a REDEMPTECH HOLDINGS PTE, LTD., REDEMPTECH LIMITED and REDEMPTECH AUSTRALIA PVT. LTD. and (collectively "Defendants") from continuing to improperly utilize Plaintiffs' trademarks by disseminating a fraudulent document which purports to contain Plaintiffs' sponsorship of one of Defendants' products allegedly invented by Defendant, Holcomb.

Specifically, Plaintiffs request a preliminary injunction ordering Defendants and those in active concert or participation with any Defendant to cease: (1) using the Rexel Marks and any trademark, service mark, logo or trade name that is confusingly similar to the Rexel Marks, including the mark "Rexel" and any variation thereof; (2) otherwise infringing upon Plaintiffs' marks or using any similar designation, alone or in combination with any other components; (3) passing off any of their products or services as those approved or sponsored by Plaintiffs and/or their employees; (4) causing a likelihood of confusion or misunderstanding as to the source of sponsorship of their businesses, products or services as being Plaintiffs' and/or its affiliates; and; (5) causing a likelihood of confusion or misunderstanding as to its affiliation, connection or association with Plaintiffs or their authorized affiliates.

Plaintiffs also request that this Court direct Defendants to: (1) deliver to Plaintiffs any and all reports, charts, and graphs in the possession of Defendants and which bear the Rexel Marks; (2) promptly eliminate Defendants' dissemination of the Infringing Report under the Rexel Marks any other confusingly similar designations from all media including, but not limited to, the internet, newspapers, websites, flyers, and promotions; (3) disgorge all profits received from the Infringing Report; (4) notify undersigned counsel in writing and provide a list of all individuals and entities (including customers of Plaintiffs) who may have been affected by Defendants' use of the Infringing Report; and (5) file with the Court within thirty (30) days of entry of the injunction, a written report, under oath, setting forth in detail the manner in which they have complied with the injunction or order.

This Motion is based upon the Complaint and Demand for Jury Trial filed simultaneously herewith, the Memorandum of Law set forth below and the supporting Affidavit of Vladimir Kitanovski (attached hereto as Exhibit "AA").

## MEMORANDUM OF LAW

I. **STATEMENT OF FACTS**

   A. **Background**

Plaintiff, Rexel, is a wholly owned subsidiary of Rexel Holdings USA Corp. ("RHUSA"). RHUSA is the parent company for all Rexel Group businesses in the United States. Plaintiff, Rexel Développement, is a wholly owned subsidiary of Rexel S.A., a publicly traded French company that is not a party to this action. Specifically, the Rexel Group is a distributor of electrical products and other materials for professional customers in the industrial, commercial, and residential segments.

Rexel conducts business in the State of Florida through its operating subsidiary, Southern Electric Supply Company, Inc., a Delaware corporation ("Southern Electric"). Southern Electric is qualified to do business in the State of Florida. Specifically, Southern Electric does business under the trade name of "Rexel" in Sarasota, Florida, the location where the events giving rise to the Complaint occurred. As part of its Florida operations, Southern Electric owns and operates a motor repair shop (the "Diagnostic Center") located at 7260 15th Street E, Sarasota, Florida 34243. Vladimir Kitanovski is the Manager of the Diagnostic Center for Rexel. A true and correct copy of the Affidavit of Vladimir Kitanovski is attached hereto as Exhibit "AA." As the Manager of the Diagnostic Center, Mr. Kitanovski is responsible for the management and operations of the motor repair shop on a day-to-day basis. See ¶ 6 of Exhibit "AA."

Rexel is the owner of Registration No. 2127573 for the REXEL service mark (the "REXEL mark"), which, among other marks owned by Plaintiff, Rexel, is duly filed with the United States Patent and Trademark Office. Rexel's marks are in full force and effect and are incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065. A true and correct copy of the Registration Statement from the United States Patent and Trademark Office for No. 2127573

is attached to the Complaint and incorporated herein by reference as Exhibit "A." Rexel Développement is the owner via assignment from Rexel Distribution of Registration Nos. 3656343, 3656344, 3656345, 3656346 and 1942008 for the REXEL trademark (together with the REXEL mark, the "Rexel Marks"). A true and correct copy of the Registration Statements from the United States Patent and Trademark Office for Nos. 3656343, 3656344, 3656345 and 3656346 are attached to the Complaint and incorporated herein by reference as Exhibits "B, C, D, and E."

Plaintiffs and their affiliated entities have continually engaged in the business of distributing electrical supplies and providing related functions, including motor repair, under Plaintiffs' marks in interstate commerce since at least the year 1995. Plaintiffs have spent significant sums of money generating its goodwill and name recognition in the electrical supply market. The public knows and identifies with the Rexel Marks, and other marks owned by Plaintiffs and its affiliated entities, as exclusively representing the source, affiliation and sponsorship of products and services furnished by Rexel.

### B.  The Defendants' Improper Acts.

Rexel has performed occasional motor repair services for Defendants since June 2009 at the Diagnostic Center. In his capacity as Manager of the Diagnostic Center, Mr. Kitanovski has met Defendant, Robert Holcomb, in connection with these motor repair services. See ¶ 7 of Exhibit "AA." On or about January 6, 2012, Defendants disseminated the fraudulent "Evaluation Report on Redemptech's High Efficiency Generator (HEG/TRS-2) Stand-Alone Power Generation Plant" (the "Infringing Report") which contains the Rexel Marks and the alleged signature and product approval of Vladimir Kitanovski, Manager of the Diagnostic Center for Southern Electric. A true and correct copy of the Infringing Report is attached to the Complaint and incorporated herein as Exhibit "I."

Among other improper and/or unlawful assertions, the Infringing Report improperly contains the Rexel Marks as well as the signature, name, title, and support of Mr. Kitanovski for Defendants' HEG/TRS-2 product. See ¶ 14-23 of Exhibit "AA." Specifically, "[t]he top of the Infringing Report contains the Rexel trademark (which I know as the Rexel logo) which appears on Rexel's business stationery, marketing materials and invoices." ¶ 15 of Exhibit "AA." Mr. Kitanovski is not familiar with the Infringing Report, Mr. Kitanovski did not prepare the Infringing Report, and Mr. Kitanovski did not sign the Infringing Report. See ¶ 18-20 of Exhibit "AA." Finally, the Infringing Report achieves far-reaching conclusions not expressed by Plaintiffs or their affiliated entities with implications which may result in damages to innocent third party investors which exceeds the damage already caused (and which may be caused in the future) to Plaintiffs.

### C. The Injunctive Relief Plaintiffs' Seek.

By circulating the fraudulent Infringing Report, Defendants have tarnished Plaintiffs' goodwill and good reputation. Defendants have been utilizing the Rexel Marks to solicit and obtain investments and capital contributions from individuals under the guise that Plaintiffs' support, authorize, or sponsor the Infringing Report. Injunctive relief is the only effective means by which Plaintiffs can immediately restrain Defendants from inflicting further harm on Plaintiffs or on the community at-large, including innocent investors.

The proposed restraint is reasonable. Plaintiffs seek to protect its business interests and goodwill and therefore desire to restrain Defendants from further infringing use of the Rexel Marks. Plaintiffs request that Defendants be required to return the reports, charts, graphs and any other documents which contain the Rexel Marks and to disgorge any and all profits received from improper use of the Rexel Marks on the Infringing Report or any other document. Given that Defendants are infringing on the protectable Rexel Marks, it is likely that Plaintiffs will

prevail on its claims against Defendants. For these reasons, Plaintiffs respectfully request that the Court issue a preliminary injunction (and then permanent injunction) against the Defendants.

## II. ARGUMENT

### A. Applicable Legal Standard.

A plaintiff is entitled to preliminary injunctive relief upon establishing: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if injunctive relief is not granted; (3) that the threatened injury outweighs any threatened harm of an injunction to defendants; and (4) that granting a preliminary injunction will not disserve the public interest. See McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998); see Tally-Ho, Inc. v. Coast Cmty. College Dist., 889 F.2d 1018, 1022 (11th Cir. 1989).

### B. Plaintiffs are Entitled to Injunctive Relief.

#### 1. Plaintiffs will succeed on the merits.

Plaintiffs will likely succeed on the merits of its claims. Plaintiffs have filed suit for claims including federal unfair competition in violation of 15 U.S.C. § 1125(a), Federal Trademark Dilution in violation of 15 U.S.C. § 1165(c), statutory dilution in violation of Fla. Stat. § 495.151, violation of Florida Deceptive and Unfair Trade Practices under Fla. Stat. § 501.201-213, and common law unfair competition. Defendants are willfully utilizing the Rexel Marks through its dissemination of the Infringing Report, which is a fraudulent document containing a fake signature of Southern Electric's Vladimir Kitanovski in his capacity as Manager of the Diagnostic Center.

In enacting the Lanham Act, Congress' avowed purpose was "[t]o protect trademarks. . ., to protect the public from deceit, to foster fair competition, and to secure to the business community the advantages of reputation and goodwill by preventing their diversion from those who have created them to those who have not." See Truck Equipment Serv. Co. v. Fruehauf

Corp., 536 F.2d 1210, 1215 (8th Cir. 1976) (quoting S. Rep. No. 1333, 1946 U.S. Code Cong. Serv. 1274, 1276).

The critical inquiry in most Lanham Act cases is whether there is a likelihood of confusion, mistake or deception between the registered mark and the allegedly infringing mark. See John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 972 (11th Cir. 1983). In this regard, it is well established that false suggestions of affiliation with a trademark owner are likely to cause confusion as to the source or sponsorship, that is, using marks without permission will constitute infringement. Burger King Corp. v. Mason, 710 F.2d 1480, 1492-93 (11th Cir. 1983).

The Affidavit of Vladimir Kitanovski attached as Exhibit "AA" unmistakably describes Defendants' infringing use of the Rexel Marks on the Infringing Report. There can be no doubt that Defendants' continued use of the Rexel Marks has caused, and will continue to cause, the consumer confusion that the Lanham Act is designed to prevent. Thus, Plaintiffs have shown a substantial likelihood of success on the merits of its Lanham Act claim.

### 2. Absent injunctive relief, Defendants' actions will cause Plaintiffs' irreparable harm.

As described above and in the attached Affidavit of Vladimir Kitanovski (Exhibit "AA"), Plaintiffs will suffer irreparable harm if Defendants are permitted to continue disseminating the Infringing Report. The overwhelming likelihood of consumer confusion establishes, as a matter of law, Rexel Développement's and Rexel's irreparable injury and entitlement to an injunction. Sundor Brands, Inc. v. Borden, Inc., 653 F. Supp. 86, 93 (M.D. Fla. 1986) ("The law is settled that the existence of a likelihood of confusion constitutes irreparable injury, as a matter of law, sufficient to satisfy the requirements of Fed.R.Civ.P. 65").

In addition to consumer confusion, the name and goodwill of Rexel, Rexel Développement and Southern Electric are injured by its inability to control the quality of Defendants' services and products. See McDonald's Corp. v. Robertson, 147 F.3d 1301, 1310 (11th Cir. 1998). (finding that "McDonald's faces damage to its own reputation and loss of customers caused by [franchisee's] distribution of an allegedly inferior . . . product held out to be McDonald's. . . . We can conceive of no realistic way to determine damages under these circumstances."). Moreover, the loss of goodwill constitutes an irreparable injury. See Mohr v. Bank of New York Mellon Corp., 393 F.Appx. 639, 646 (11th Cir. 2010) (internal quotations omitted). Therefore, Plaintiffs have shown a substantial threat of irreparable injury to its business.

### 3. The balance tips sharply in Plaintiffs' favor.

Plaintiffs have also demonstrated that the balance of the hardships tips in its favor. The extent of Defendants' conduct is not known at this time, and will only be known through discovery. However, Defendants are clearly disseminating a fraudulent report which contains the Rexel Marks and purports to have received approval and sponsorship from Plaintiffs which will tarnish Plaintiffs' good name and reputation.

As willful infringers of the Rexel Marks, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." Krause Int'l, Inc. v. Reed Elsevier, Inc., 866 F. Supp. 585, 587-88 (D.D.C. 1994). The balance of harms, as such, "cannot favor a defendant whose injury results from the knowing infringement on the Plaintiff's trademark." Malarkey-Taylor Assoc., Inc. v. Cellular Telecommunications Indus. Ass'n, 929 F. Supp. 473, 478 (D. D.C. 1996).

Defendants, on the other hand, would not be harmed by an injunction because Plaintiffs proposed relief merely seeks to enjoin Defendants from undertaking unlawful actions (i.e. (1) using the Rexel Marks and any confusingly similar trademark, service mark, logo or trade name; (2) passing off Defendants products or services as those approved or sponsored by Plaintiffs; and (3) causing a likelihood of confusion or misunderstanding as to sponsorship or affiliation of Defendants' business, products or services), to return any documents containing the Rexel Marks and to disgorge any profits received from Defendants illegal actions. Therefore, it is clear that the injury to Plaintiffs in this instance greatly outweighs any potential harm to Defendants.

### 4.  The public interest favors granting Plaintiffs' injunctive relief.

The public interest favors granting relief to Plaintiffs. Defendants' improper actions not only affect Plaintiffs, but Plaintiffs' customers and the public at-large. Defendants are defrauding ordinary citizens by leveraging Plaintiffs goodwill to receive support for Defendants' alleged invention described in the Infringing Report. Entry of a preliminary injunction will further the public interest because, as this Court noted in Sundor Brands "[i]n a trademark or service mark infringement case, a third party, the consuming public, is present and its interests are paramount. Indeed, when a trademark is said to have been infringed, what is actually infringed is the right of the public to be free of confusion and the synonymous right of the trademark owner to control his products' reputation." 653 F. Supp. at 93. The injunctive relief requested by Plaintiffs in this case is specifically intended to remedy public injury by dispelling the confusion created by Defendants' unlawful actions and therefore represents the advancement of the public's interest.

### C.  The Bond Securing the Preliminary Injunction Should be Minimal

Federal Rule of Civil Procedure 65(c) provides that a party seeking a preliminary injunction shall post a bond in an amount to be determined by the court, to secure the adverse

party for costs and damages if it is ultimately found that the injunction was entered improvidently. The amount of the injunction bond is within the sound discretion of the trial court. Carillon Importers, Ltd. v. Frank Pesce Int'l Group, Ltd., 112 F.3d 1125, 1127 (11th Cir. 1997). Because the amount of the injunction bond is within the sound discretion of the trial court, "it may elect to require no security at all." Corrigan Dispatch Co. v. Casa Guzman S.A., 569 F.2d 300, 303 (5th Cir. 1978).

Plaintiffs request that the bond required under F.R.C.P. 65(c) for entry of the preliminary injunction be either dispensed with or minimal. Defendants are clearly infringing on the Rexel Marks and are defrauding consumers while tarnishing Plaintiffs' goodwill and reputation in the electrical supply industry. Defendants have no legal right to use the Rexel Marks. Given that Defendants' actions are improper and unlawful, no harm will result from the Court's issuance of a preliminary injunction restraining them from engaging in their unlawful acts. Therefore, Plaintiffs respectfully request that the bond be set in a minimal amount, if one is necessary at all.

## III. CONCLUSION

As the above described standards for issuance of a preliminary injunction have been met, Plaintiffs respectfully request that the Court enjoin Defendants' trademark infringement and enter a Preliminary Injunction (and ultimately, a Permanent Injunction) consistent with this Motion.

WHEREFORE, Plaintiffs request entry of a Preliminary Injunction as follows:

A. Enjoining Defendants, their agents, employees and anyone in active concert or participation with Defendants from:

    i. Using the Rexel Marks and any trademark, service mark, logo or trade name that is confusingly similar to the Rexel Marks, including the mark "Rexel" and any variation thereof;

    ii. Otherwise infringing upon Plaintiffs' marks or using any similar designation, alone or in combination with any other components;

    iii.    Passing off any of their products or services as those approved or sponsored by Rexel and/or its employees or affiliated entities, including but not limited to, Southern Electric;

    iv.    Causing a likelihood of confusion or misunderstanding as to the source of sponsorship of their businesses, products or services as being Plaintiffs' and/or its affiliates; and

    v.    Causing a likelihood of confusion or misunderstanding as to its affiliation, connection or association with Plaintiffs or their authorized affiliates.

B. Directing Defendants, at Defendants' cost, to:

    vi.    Deliver to Plaintiffs any and all reports, labels, signs, prints, packages, products, manuals and advertisements in the possession of Defendants and which bear the Rexel Marks;

    vii.    Promptly eliminate their dissemination of the Infringing Report (and any other versions of same) under the Rexel Marks any other confusingly similar designations from all media including, but not limited to, the internet, newspapers, websites, flyers, and promotions;

    viii.    Provide undersigned counsel with the names and addresses, including email addresses, of anyone who received the Infringing Report; and

    ix.    File with the Court within thirty (30) days of entry of the injunction, a written report, under oath, setting forth in detail the manner in which they have complied with the injunction or order.

Respectfully submitted March 29th, 2012

/s/ Richard S. Dellinger
**RICHARD S. DELLINGER, ESQUIRE**
Florida Bar No. 0179957
**MELODY B. LYNCH, ESQUIRE**
Florida Bar No. 0044250
Lowndes, Drosdick, Doster, Kantor & Reed, P.A.
215 North Eola Drive
Orlando, Florida 32802
Telephone:   (407) 843-4600
Facsimile    (407) 843-4444
Attorneys for Plaintiffs

## VERIFICATION

I, John C. Gschwind, having been duly sworn, depose and say that I have been duly appointed and authorized by the Plaintiffs to execute this verification on their behalf. As part of my duties as Vice President, Legal, General Counsel and Corporate Secretary, I am personally familiar with the matters contained herein. I have reviewed and analyzed the files and records that are kept in the regular course of my employer's business with respect to the allegations contained in this Motion. As a result, I have personal knowledge of the matters contained herein.

FURTHER AFFIANT SAYETH NAUGHT.

Name: _____
Title: Vice President, Legal, General Counsel & Corporate Secretary, Rexel Holdings USA Corp.

STATE OF _Connecticut_
COUNTY OF _Fairfield_

Sworn to and subscribed before me this 29th day of March, 2012, by John C. Gschwind.

MARJORIE M. GIUDICE
NOTARY PUBLIC
COMMISSION EXPIRES FEB. 28, 2015

Signature: _Marjorie M. Giudice_
Print Name: _Marjorie M. Giudice_
Commission No.: _124329_
Commission Expires: _2/28/2015_

Personally Known ✓  or Produced Identification _____
Type of Identification _____