UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REXEL, INC., REXEL
DEVELOPPEMENT SAS,
and SOUTHERN ELECTRIC
SUPPLY CO., INC.,

        Plaintiffs,

v.                          CASE No. 8:12-CV-678-T-33TGW

ROBERT R. HOLCOMB,
REDEMPTECH HOLDINGS PTY, LTD.,
a/k/a REDEMPTECH HOLDINGS PTE,
LTD., REDEMPTECH LIMITED, and
REDEMPTECH AUSTRALIA PVT, LTD.

        Defendants.

_____

REPORT AND RECOMMENDATION

      The plaintiffs seek a preliminary injunction which prohibits the

defendants from continuing to disseminate a report which includes, without

the plaintiffs' authorization, their REXEL mark, and suggests falsely that the

plaintiffs endorse one of the defendants' products. Only defendant Robert R.

Holcomb has been served. He did not file a memorandum in opposition to the

motion for preliminary injunction, and did not timely submit any evidence in opposition to the motion. Thus, the plaintiffs' preliminary injunction showing is unopposed.

Based on the plaintiffs' uncontroverted evidence, the plaintiffs are entitled to preliminary injunctive relief. However, the relief requested in the motion is overbroad. I therefore recommend that the Plaintiffs' Verified Motion for Preliminary Injunction (Doc. 2) be granted to the extent that Holcomb be ordered to cease dissemination of the allegedly infringing report and use of the plaintiffs' REXEL mark, and to return to the plaintiffs papers and items bearing the plaintiffs' REXEL mark.

I.

The plaintiffs assert the following facts. As indicated, those facts have not been properly controverted at this point.

Plaintiffs Rexel and Rexel Developpement SAS ("Rexel") distribute electrical products and provide related electrical services worldwide (Doc. 2-1, ¶4). Rexel conducts business in Florida through its subsidiary, plaintiff Southern Electrical Supply Company (Doc. 2, p. 3).

Defendant Redemptech is a foreign corporation that is located in Australia (Doc. 1, ¶8). Defendant Robert Holcomb, a resident of Sarasota, Florida, is alleged to be a principal of Redemptech who committed the infringing acts (id., ¶7).

Rexel owns registration number 2,127,573 for the REXEL service mark, and Rexel Developpement SAS owns registration numbers 3,656,343; 3,656,344; 3,656,345 and 3,656,346 for the REXEL trademark ('573, '343, '344, '345, '346) (see Doc. 1-1, pp. 1-17). The plaintiffs have operated under these marks since at least 1995, and have spent significant sums of money generating goodwill and name recognition in the electrical supply market (Doc. 2, p. 4). Consequently, the public identifies the REXEL mark as exclusively representing the source, affiliation and sponsorship of products and services furnished by Rexel (id.).

Southern Electric Supply owns a motor repair shop in Sarasota, Florida, where it conducts business under the trade name "Rexel" ("the diagnostic center") (id., p. 3). Vladimir Kitanovski is the manager of the diagnostic center (Doc. 2-1, ¶2). Rexel has performed motor repair services for the defendants at the diagnostic center since June 2009, and Kitanovski

met Holcomb in connection with these motor repairs (Doc. 2, p. 4; Doc. 2-1, ¶7).

Most recently, in January 2012, Redemptech requested that the diagnostic center dip and bake a stator core of a motor (Doc. 2-1, ¶8). After completion, the diagnostic center, as it regularly does, conducted a "hipot" test to ensure that the service was done correctly (id., ¶¶8, 9). Holcomb asked to keep a print-out of the hipot test results, and additionally requested a "cover page containing the Rexel logo and [Kitanovski's] signature and title" to confirm the hipot test was performed by the diagnostic center (id., ¶11). Kitanovski provided Holcomb with these documents (id., ¶12).

In February 2012, a document entitled "Evaluation Report on Redemptech's High Efficiency Generator (HEG/TRS-2) Stand-Alone Power Generation Plant" ("the Report") was disseminated (Doc. 2-1, ¶14; see Doc. 1-1, pp. 22-24). The cover sheet of the Report contains the Rexel trademark/logo, the address of Southern Electric Supply's Sarasota location, Kitanovski's name and title, and what appears to be Kitanovski's signature (Doc. 1-1, p. 22; Doc. 2-1, ¶¶15, 20).

The Report states that Rexel was commissioned by Redemptech to evaluate the performance of its power generation plant product, which was invented by Holcomb (Doc. 1-2, p. 23; Doc. 2-1, ¶16).  The Report indicates that it was prepared on January 6, 2012, by Kitanovski, and that Kitanovski endorses the product (Doc. 1-1 pp. 22-24; Doc. 2-1, ¶¶16, 17).  Thus, in the Report Kitanvoski purportedly comments that the product is "quite remarkable," and is "the first power generation plant of which [he is] aware that allows generation of unlimited amounts of electric power while requiring no outside fuel supply" (Doc. 1-1, p. 23).

However, Kitanovski has submitted an affidavit attesting that he did not prepare the Report, he is not familiar with the Report, and he did not sign the Report (Doc. 2-1, ¶¶18-20).  Kitanovski avers further that he did not evaluate the product in the Report, or reach any of the conclusions stated in the Report (id., ¶22).

Consequently, on March 30, 2012, the plaintiffs filed a complaint against the defendants, alleging that the defendants' creation and dissemination of the infringing and fraudulent Report constitutes federal and common law unfair competition, and federal and state trademark dilution, and

violates Florida's Deceptive and Unfair Trade Practices Act (Doc. 1). The plaintiffs also filed a Verified Motion for Preliminary Injunction (Doc. 2), asserting that, unless the defendants are enjoined, they will continue to distribute the allegedly infringing Report, thereby threatening the plaintiffs' goodwill and reputation (Doc. 1, ¶¶43, 44).

The Verified Motion for Preliminary Injunction was referred to me for a report and recommendation (Doc. 5). On April 17, 2012, the plaintiffs filed a Return of Service stating that defendant Holcomb had been served (Doc. 7).[1] A second Return of Service states that the process server was "unable to locate" the corporate defendant (Doc. 8).

A hearing was scheduled on the Motion for Preliminary Injunction (Doc. 14), and was held on May 16, 2012 (see Doc. 17). Defendant Holcomb did not file an opposition to the Motion for Preliminary Injunction.

---

[1]In response, Holcomb, through his counsel, filed a Motion to Dismiss Under Rule 12(b) for Lack of Jurisdiction, Improper Venue and Failure to Join Indispensable Party (Doc. 9). The motion, which is less than two full pages in length, is patently inadequate as it fails to set forth a statement of facts and does not contain a memorandum of law, in contravention of Local Rule 3.01(a).

At the hearing, Holcomb's counsel requested to submit affidavits, and present witnesses, in opposition to the preliminary injunction motion. However, as I explained to defense counsel at the hearing, those requests violated Local Rule 4.06, which requires service of opposing affidavits (and a responsive brief) at least seven days before the hearing. Local Rule 4.06(b)(3). Additionally, pursuant to Local Rule 4.06(b), the hearing is limited to oral argument of the parties absent prior leave of court to the contrary. I added that, if defense counsel had presented the evidence just two or three days prior to the hearing, I would have been inclined to accept it because opposing counsel would then have had an opportunity to prepare a response; however, proffering evidence at the hearing was patently unfair to the plaintiffs, who had no opportunity to review, or prepare a response, to that evidence. Consequently, those requests were denied. Accordingly, the plaintiffs' showing in support of a preliminary injunction is unopposed.

The hearing then focused on the requested relief. The relief requested in the motion for preliminary injunction was overbroad. For example, it included a general prohibition against infringement and using

-7-

marks "confusingly similar" to the REXEL mark, and also sought disgorgement of profits (see Doc. 2, pp. 2, 10-11).

Consequently, at the hearing plaintiffs' counsel greatly narrowed the requested relief.  The plaintiffs now request a preliminary injunction which (1) enjoins the dissemination of the Report and the defendants' use of the REXEL mark (registration nos. '573, '343, '344, '345, and '346); (2) orders the defendants to deliver to the plaintiffs documents and items in their possession bearing those REXEL marks; and (3) directs the defendants to report to the court within 30 days their compliance with the preliminary injunction. Defense counsel had no meaningful response to the requested relief.

II.

A preliminary injunction may be issued when necessary "to protect the plaintiff from irreparable injury and to preserve the district court's power to render a meaningful decision after a trial on the merits." Canal Authority of State of Florida v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974). The remedy, however, is considered extraordinary and drastic.  It may be granted only if the plaintiffs clearly show (1) a substantial likelihood that they

-8-

will prevail on the merits; (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted; (3) that their threatened injury outweighs the threatened harm the injunction may cause the opposing party; and (4) that granting the injunction will not disserve the public interest. Id. at 572-73. The motion should ordinarily be denied if the plaintiffs fail to meet their burden as to even one of the foregoing prerequisites. United States v. Jefferson County, 720 F.2d 1511, 1519-20 n.21 (11th Cir. 1983).

### III.

The traditional four factors that are considered in connection with a motion for a preliminary injunction apply as well to trademark cases. E. Remy Martin & Co., S.A. v. Shaw-Ross Intern. Imports, Inc., 756 F.2d 1525, 1530 n.13 (11th Cir. 1985). An evaluation of the plaintiffs' uncontroverted evidence and memorandum clearly show that the plaintiffs have satisfied those four factors.

### A. Likelihood of Success on the Merits

With regard to the factor of likelihood of success on the merits, the plaintiffs focus on their claim that the defendants' alleged conduct constitutes unfair competition in violation of the Lanham Act, 15 U.S.C.

1125(a), because it is likely to confuse or deceive customers as to the plaintiffs' association with, and endorsement of, the defendants' product (Doc. 1, ¶49; Doc. 2, pp. 6-7). In order to succeed on the merits of an unfair competition claim, the plaintiffs must show that they had prior rights to the mark, and that the defendants adopted a mark or name that was the same or confusingly similar to its mark, such that consumers were likely to confuse the two. Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193 (11th Cir. 2001). A typical case seeking relief under the Lanham Act for unfair competition focuses on whether there is a likelihood of confusion from the use of the allegedly infringing mark. University of Florida v. KPB, Inc., 89 F.3d 773, 777 n.7 (11th Cir. 1996). In particular, "falsely suggesting affiliation with the trademark owner in a manner likely to cause confusion as to source or sponsorship constitutes infringement." Burger King Corp. v. Mason, 710 F.2d 1480, 1492 (11th Cir. 1983), cert. denied, 465 U.S. 1102 (1984).

The plaintiffs have established that they possess valid marks by identifying the registration numbers of each mark and attaching copies of the marks from the U.S. Patent and Trademark Office (Doc. 1-1, pp. 1-17). This

evidence is sufficient to show that the plaintiffs owned the marks, as registration is prima facie evidence of the registrants' ownership and exclusive right to use the mark. American Heritage Life Ins. Co. v. Heritage Life Ins. Co., 494 F.2d 3, 10 (5th Cir. 1974); 15 U.S.C. 1115(a).

Further, the evidence undoubtedly shows that the defendants used the marks. The Report highlights the REXEL mark/logo, and contains references to Rexel (Doc. 1-1, pp. 22-24). Thus, it purports to be authored and signed by a Rexel manager, states that Redemptech commissioned Rexel to evaluate the performance of the product in the Report, and indicates Rexel's and Kitanovski's endorsement of the product (id.). It is asserted that the defendants have disseminated this report in order to obtain investors for the defendants' product (see Doc. 1, ¶43; Doc. 2, p. 5; Doc. 2-1, ¶14).

Moreover, there is a substantial likelihood that this unauthorized use of the REXEL mark, and the defendants' assertions of Rexel's involvement with the product, would cause customer confusion as to plaintiffs' association with, and endorsement of, the defendants' product (which is allegedly the intended result) (see Doc. 2, p. 5)). See Alliance Metals, Inc., of Atlanta v. Hinely Industries, Inc., 222 F.3d 895, 907 (11th Cir.

2000)(identifying factors normally considered in evaluating the likelihood of confusion). Thus, the plaintiffs assert that they "did not participate in any performance evaluation as asserted in the Infringing Report, nor did Plaintiffs authorize, sponsor or permit Defendants, in any way, to affix the REXEL Marks" on the Report (Doc. 1, ¶41, see also id.,¶42; Doc. 2-1). However, a consumer reviewing the Report would likely conclude that the plaintiffs did those things, and that they endorse the defendants' product. See Burger King Corp. v. Mason, supra, 710 F.2d at 1492-93 ("[c]ommon sense compels the conclusion that a strong risk of consumer confusion arises" when a defendant fraudulently uses a company's trademarks).

In sum, based on the evidence presented in conjunction with this motion, the plaintiffs have demonstrated they are likely to succeed on the merits of their unfair competition claims.

B. Irreparable Injury.

The Eleventh Circuit has said that "a sufficiently strong showing of likelihood of confusion caused by trademark infringement may by itself constitute a showing of irreparable harm." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1310 (11th Cir. 1998). This principle would seemingly

-12-

support a finding of irreparable harm in this case, as the defendants are using without authorization the plaintiffs' identical REXEL mark, and falsely suggesting the plaintiffs' endorsement of the defendants' product.

In all events, the plaintiffs' unrefuted evidence that the defendants have infringed their REXEL mark, and fraudulently indicated Rexel's endorsement of their product, clearly presents a threat of irreparable harm to the plaintiffs' reputation and goodwill. Thus, the plaintiffs assert that this circumstance jeopardizes their promotional efforts and quality control because they cannot control the quality of the defendants' product (Doc. 2, p. 8). Furthermore, based on Rexel's purported enthusiastic endorsement of the defendants' product, which was allegedly given after Rexel's purported extensive testing (Doc. 1-1, p. 23), it is likely that "[a]ny shortcomings of the [defendants' product] ... would be attributed to [the plaintiffs]." Burger King Corp. v. Mason, supra, 710 F.2d at 1493. This harm, furthermore, cannot meaningfully be compensated by an award of damages. See Ferrero v. Associated Materials Inc., 923 F.2d 1441, 1449 (11th Cir. 1991); Mohr v. Bank of New York Mellon Corp., 393 Fed. Appx. 639, 646 (11th Cir. 2010).

-13-

There is, of course, no countervailing showing by the defendants. Consequently, the plaintiffs have sufficiently demonstrated irreparable harm.

C. <u>Balancing of Harm to the Defendants.</u>

As indicated, the plaintiffs have sufficiently shown a threat of irreparable harm to their goodwill and reputation. The defendants have not submitted an opposition memorandum or evidence in opposition to this motion. Therefore, there is nothing to balance against the plaintiffs' showing of irreparable harm.

Furthermore, it is noted that it does not appear to be a particularly onerous burden for Holcomb to correct the alleged unlawful conduct that he started, and the requested injunctive relief at the hearing is narrowly tailored to achieve that result. <u>See</u> <u>Burger King Corp.</u> v. <u>Majeed,</u> 805 F.Supp. 994, 1006 (S.D. Fla. 1992)("[O]ne who adopts the mark of another ... acts at his own peril, since he has no claim to the .... advantages thereby derived.").

In sum, the risk of irreparable harm to the plaintiffs outweighs the harm to Holcomb from the entry of a preliminary injunction.

-14-

D. The Public Interest.

The fourth factor typically asks if "granting [a] preliminary injunction will disserve the public interest." See, e.g., E. Remy Martin & Co., S.A. v. Shaw-Ross International Imports, Inc., supra, 756 F.2d at 1530 n.13. There is no indication in this case that an injunction would "disserve" the public interest. To the contrary, a preliminary injunction would affirmatively serve the public interest insofar as it will prevent consumer confusion and cease allegedly fraudulent conduct.

In sum, all four of the traditional factors for preliminary injunctive relief weigh in favor of the issuance of a preliminary injunction. The next issue is the proper scope of the preliminary injunction.

IV.

The preliminary injunctive relief originally requested by the plaintiffs in their motion was overbroad (see Doc. 2, p. 2). Thus, among other things, the plaintiffs requested a general prohibition against the defendants' use of any confusingly similar mark and infringement upon the plaintiffs' marks (id.). They also sought disgorgement of profits (id.).

As discussed at the hearing, a preliminary injunction must be specific. Thus, pursuant to Rule 65(d)(1)(C), F.R.Civ.P., "[e]very order granting an injunction must ... describe in reasonable detail ... the act or acts restrained or required." Accordingly, a prohibition against use of marks that are "confusingly similar" (Doc. 2, p. 2), does not satisfy Rule 65 because it fails to "adequately specif[y] the acts which [the defendants] must discontinue in order to avoid" infringement. John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 985 (11th Cir. 1983); see also 1 McCarthy on Trademarks and Unfair Competition, at §8:3 (4th ed. 1998)(an imprecise injunction leaves the defendant uncertain as to how to avoid a charge of contempt and also creates dangers of anti-competitive overprotection).

Furthermore, it is inappropriate to issue a preliminary injunction which precludes the defendants from "otherwise infringing" upon the plaintiffs' marks (Doc. 2, p. 2) because the court may not simply order a party to "obey the law." See, e.g., American Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407, 1412 (11th Cir. 1998). Additionally, the disgorgement of profits is not an appropriate form of preliminary injunctive relief, as the purpose of a preliminary injunction is to cease harm that cannot be remedied

-16-

with money. See, e.g., United States v. Jefferson County, supra, 720 F.2d at 1520; SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A., 243 Fed. Appx. 502, 504 (11th Cir. 2007).

Therefore, at the hearing the plaintiffs greatly narrowed the requested preliminary injunctive relief. They seek a preliminary injunction which (1) enjoins the defendants' continued dissemination of the Report and use of the plaintiffs' REXEL marks (registration nos. '573, '343, '344, '345, and '346); (2) directs the defendants to deliver to the plaintiffs papers and items bearing those marks; and (3) orders the defendants to report to the court within 30 days its compliance with the preliminary injunction.

Defense counsel posed no meaningful objection to the requested relief. Furthermore, such relief is reasonable under the circumstances of this case.

Thus, based on the plaintiffs' showing that there is a substantial likelihood of success on their unfair competition claim, neither Holcomb, nor anyone acting in concert with him, should be permitted to disseminate the alleged infringing Report to the plaintiffs' detriment. Further, defense counsel did not offer any legitimate reason for Holcomb to maintain

possession of papers and documentation with the REXEL marks. Moreover, a directive for Holcomb to report, in a sworn document, his compliance with the preliminary injunction appears to be the only reasonable way to determine compliance with the preliminary injunction. 15 U.S.C. 1116(a); see, e.g., CITGO Petroleum Corp. v.Mid-State Energy, Inc., Case No.8:12–cv–876–T–33MAP; 2012 WL 1405710 at *3 (M.D. Fla. 2012)(ordering as part of a temporary injunction for a party to file with the court a report regarding compliance with the injunction).

Finally, the plaintiffs propose in their memoranda no or minimal bond (Doc. 2, p. 10). See Rule 65(c), F.R.Civ.P. Defense counsel did not make an argument for any amount of bond, and none appears to be warranted under these circumstances.

## V.

I therefore recommend that the Plaintiffs' Verified Motion for Preliminary Injunction (Doc. 2) be granted to the extent that Holcomb, and those acting in concert with him, be enjoined from further dissemination of the Report (Doc. 1-1, pp. 22-24) and from using the plaintiffs' REXEL marks registration nos. 2,127,573; 3,656,343; 3,656,344; 3,656,345 and 3,656,346.

Further, it is recommended that Holcomb be ordered to deliver to the plaintiffs (at Holcomb's cost) reports, labels, signs, packaging, and other papers and documents in his possession bearing the REXEL marks identified above. In addition, Holcomb should be directed to file with the court, and serve on the plaintiffs, within thirty days of the entry of the preliminary injunction, a report in writing under oath setting forth in detail the manner and form in which he has complied with the injunction.

Respectfully submitted,

DATED: MAY 2/, 2012

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).